Paul JOHNSON
and Susan Johnson,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 010680D)

Trial was held October 11, 2001, in the courtroom of the Oregon Tax Court, Salem.

Paul and Susan Johnson, Plaintiffs, argued the cause *pro se*.

Nancy Green, Auditor, Department of Revenue, argued the cause for Defendant.

Decision rendered December 13, 2001.

**JILL A. TANNER, Magistrate.**

Plaintiffs appeal Defendant's Revised Audit Report, dated April 2, 2001, for the 1996 tax year. A trial was held in the Oregon Tax Court, Salem, Oregon, on Thursday, October 11, 2001. Paul Johnson and Susan Johnson appeared on their own behalf. Nancy Green, Auditor, appeared on behalf of Defendant.

## I. STATEMENT OF FACTS

The issue before the court is the taxable gain or loss on the sale of Plaintiffs' rental property.

In 1989, Plaintiffs purchased a personal residence in Bend, Oregon, paying $200,000. In addition to a personal residence, a rental property consisting of a four-car garage with a two bedroom, one bathroom apartment located above the garage, was located adjacent to Plaintiffs' personal residence. At the time of the purchase, Johnson[1] testified that he and his wife thought they were buying one property. They believed that the residence and rental property were combined on the county's tax records as one tax account number. Subsequently, Plaintiffs received a property tax statement for the residence and one acre, and another property tax statement for the rental property including four acres and improvements. Those two statements served as a notice to Plaintiffs that their property was recorded in two tax accounts by the county.

In assembling Plaintiffs' tax records for their certified public accountant who prepares their income taxes, Johnson testified that he allocated $145,000 of the total $200,000 purchase price to their personal residence and $55,000 to the rental property.[2] Johnson testified that the

---

[1] References to testimony by "Johnson" refer to Paul Johnson.

[2] Plaintiffs' certified public accountant wrote that the actual allocation for tax purposes was $145,395 for the residence and $55,000 for the rental property.

allocation was based on the real market value of the residence as shown on the county's tax records, with the residual amount of the purchase price allocated to the rental property.

In September 1994, Plaintiffs purchased another personal residence located closer to the City of Bend. Plaintiffs listed their current residence and rental property for sale. Shortly after listing the two properties, a potential buyer approached Plaintiffs with a request to rent the residence for a year with an option to purchase. As they had done since 1989, Plaintiffs continued to operate the rental property.

At the end of the year, the potential buyer decided not to buy the properties. Plaintiffs again listed the two properties with an asking price of $299,780. As time passed, Plaintiffs were concerned that they would not sell their personal residence within the allowable two-year period to avoid income tax recognition of capital gain on the sale. Shortly before the two-year period expired, Plaintiffs received an offer of $290,000 for their personal residence and rental property. Plaintiffs were presented with two offers: $258,500 for the personal residence and $31,500 for the rental property. The purchase of the rental property was contingent on the buyer obtaining a loan to finance the purchase of the residence. Plaintiffs accepted the offers as presented on August 30, 1996, and the transaction closed on September 26, 1996.

When Plaintiffs' certified public accountant prepared their 1996 income taxes, Plaintiffs claimed an ordinary loss in the amount of $16,755 on the sale of the rental property. Defendant denied Plaintiffs' ordinary loss and recomputed a taxable gain in the amount of $28,320. The gain resulting from the sale of the personal residence was deferred. Internal Revenue Code (IRC) section 1034.[3]

## II. ANALYSIS

■■ In determining the gain or loss resulting from the sale of rental property, the court must determine the amount of economic benefit received by a taxpayer when the property

---

[3] All references to IRC section 1034 are prior to the Taxpayer Relief Act of 1997, Pub L 105-34, section 312.

was sold. In this case, the court was presented with a purchase agreement, stating that the buyer's purchase price for Plaintiffs' rental property was $31,500. Plaintiffs allege that the buyer's purchase price paid in cash is the economic benefit received by them. However, the court's analysis of the economic benefit cannot be complete with only a review of the stated purchase price on the sales agreement when the sale of the rental property occurs in conjunction with the sale of a personal residence.

■　When a taxpayer sells a personal residence, a taxpayer may defer gain from the sale of a principal residence provided the recognized gain is rolled over to a new principal residence within the statutory time limits. *See* IRC § 1034. Section 1034(a) provides that a taxpayer must recognize gain from the sale of his principal residence only to the extent the adjusted sales price[4] of that residence exceeds the cost of property purchased and used as a new principal residence within two years before or after the date of sale. Where part of a taxpayer's property is used as a principal residence and part is used for business purposes, only the portion of the cost allocable to the residential use can be deferred. Treas Reg § 1.1034-1(c)(3)(ii).

The significance of allocating the buyer's purchase price of the property is especially important in a circumstance such as this where Plaintiffs considered the property,

---

[4] IRC section 1034 provides in pertinent part as follows:

"(b) Adjusted sales price defined.

"(1) In general. For purposes of this section, the term 'adjusted sales price' means the amount realized, reduced by the aggregate of the expenses for work performed on the old residence in order to assist in its sale.

"(2) Limitations. The reduction provided in paragraph (1) applies only to expenses—

"(A) for work performed during the 90-day period ending on the day on which the contract to sell the old residence is entered into;

"(B) which are paid on or before the 30th day after the date of the sale of the old residence; and

"(C) which are—

"(i) not allowable as deductions in computing taxable income under section 63 (defining taxable income), and

"(ii) not taken into account in computing the amount realized from the sale of the old residence."

including both tax accounts, as their residence. Plaintiffs then sold the entire property including the personal residence and rental property at the same time and to a sole buyer. In light of the different income tax consequences, the buyer's purchase price must be allocated between the personal residence and rental property in order to properly compute the gain or loss attributable to each type of property.

■  When one of the properties sold is a personal residence, the statute, regulations and case law do not provide any guidance as to how the allocation must be made. *See Schlicher v. C.I.R.*, 73 TCM (CCH) 1801, 1805 (1997). The court in *Schlicher* considered various methods in determining how to allocate the buyer's purchase.[5] The common methods of allocating the sale price for multiple use properties, such as square footage or number of units, were not satisfactory because the plaintiff's properties, like the subject property before this court, do not occupy the same building and the properties are distinctly different in size, shape, age, and quality. Because of the lack of similarity between plaintiffs' personal residence and rental property, the *Schlicher* court's analysis supports this court's conclusion that fair market value is the most appropriate allocation method.

The court must determine the real market value of the rental property.[6] In support of the real market value of

---

[5] Defendant concluded that in order to properly compute the gain or loss on the sale of the rental property, the allocation must be done in proportion to the fair market value of the properties sold. Defendant supports it conclusion by citing *Davock v. Commissioner*, 20 TC 1075 (1953). In *Davock*, the court held that an allocation of the sale price is made in proportion to the fair market value of the properties sold. *Id.* at 1080. However, the property sold in *Davock* was investment property and did not include the sale of a personal residence. The fair market value method of allocation may or may not be appropriate in multiple use property(ies), where one use is a personal residence and the other use is business.

[6] In its determination, this court considered the definition of real market value as defined in ORS 308.205(1) (1997), which provides:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

When determining the real market value of property, this court has frequently looked for arm's-length sales transactions of property similar in size, age, and location to the subject property.

the rental property, the parties presented evidence indicating that the majority of the real market value of the rental property can be attributed to the four acres of land and not the improvements, a four-car garage and rental apartment. Johnson testified that he and his wife did not maintain the rental apartment nor improve it. The garage was described as in need of repairs and the garage ceiling stained from a water leak in the roof some years prior to Plaintiffs' purchase.

In determining the real market value of the rental property, the court was presented with comparable sales data and county historical trending data. At the time of the sale of the rental property, the county's tax roll showed a real market value of $89,130 for land and $61,710 for improvements. However, soon after the new buyers purchased the property, they successfully appealed the value of the rental property, resulting in a land value of $65,000 and an improvement value of $32,000, to the board of property tax appeals (Board). The county appraiser apparently did not agree with the land value determined by the Board because within five months of the appeal date the county raised the land value to $89,290. There were no adjustments made to the improvements value. The county appraiser did not appear as a witness, denying the court an opportunity to understand how the county determined its values.

Green presented the court with two comparable sales. Green described Comparable Sale 1 as a vacant 4.2 acre parcel located approximately three miles from Plaintiffs' property. The property was purchased by the seller on March 17, 1995, for $40,000 and the adjusted sales price on July 26, 1996, was $57,500. Comparable Sale 2 was a 4.7 acre parcel with improvements, including a 1972 model manufactured home, carport, garage/shop, deck and various outbuildings including sheds, pump house, and general multi-purpose building. Comparable Sale 2 sold for $85,000. Green testified that she believed Plaintiffs' property would have a greater real market value than Comparable Sale 2 because Comparable Sale 2 was located in an area zoned for multi-purpose use. Plaintiffs disputed Defendant's conclusion because of their discussions with land use planners. The court was not presented with an appraisal of the rental property.

Defendant's comparable sales data included two sales within close proximity to Plaintiffs' rental property. Unfortunately, Comparable Sale 2 was not adjusted for size, location, quality, and age, which substantially reduces the comparability. Comparable Sale 1, however, is persuasive as to the value of Plaintiffs' four acres of land.

■　　　　Prior to determining the real market value of the land, the court must consider whether it is correct to allocate all of the real market value of the four acres recorded by the county assessor in one tax account (Tax Account 200) to the rental property. It is appropriate for the court to consider the "facts and circumstances" in the case, including the "good faith of the taxpayer" and how Plaintiffs used their land. *See Bittner v. Dept. of Rev.*, 15 OTR 18, 21 (1999), citing Treasury Regulation section 1.1034-1(c)(3)(i).

Based on Plaintiffs' testimony, it is clear to the court that Plaintiffs considered most of the land recorded in Tax Account 200 as part of their residence. Johnson testified that Plaintiffs incurred substantial costs to landscape their personal residence, including a 2,000 square foot lawn, irrigation system and planting of various trees, shrubs, and perennials. Defendant included the landscaping costs as allowable expenditures to increase the basis of Plaintiffs' residence. Plaintiffs submitted a copy of the plot plan for the two properties. There was no testimony that the tenant in the rental property used any of the land, except that portion of the property required for access. The location of the rental property and Plaintiffs' use of the land surrounding their residence support a finding that no more than one of the four acres recorded in Tax Account 200 should be allocated to the rental property.

Based on Comparable Sale 1 and the county's historical property information, the court concludes that the real market value of Plaintiffs' rental property was $15,000 for one acre of land and $32,000 for the improvements for a total real market value as of the date of sale of $47,000.

The parties are in agreement that the real market value of Plaintiffs' residential property (improvements and one acre of land) as of September 9, 1996, 10 days after the

date of sale, was $265,000. The court accepts the parties determination of value with the exception that the land value of Plaintiffs' residence must include the real market value of three additional acres of land ($45,000) recorded in Tax Account 200. Thus, the total real market value of Plaintiffs' residence was $310,000.

Based on those findings of fair market value for the two properties, the buyer's purchase price of $290,000 is allocated as follows:

Residence:  $\frac{\$310,000}{\$357,000} \times \$290,000 = \$251,821$

Rental:     $\frac{\$\ 47,000}{\$357,000} \times \$290,000 = \$\ 38,179$

In 1989, when Plaintiffs purchased their residence and rental property, they incorrectly computed the basis of each of the properties. Plaintiffs computed the basis using a residual method, allocating the purchase price based on the real market value of the residence on the county's tax roll with the balance of the purchase price allocated to the rental property. The real market value of Plaintiffs' residence was $13,800 for one acre of land and $141,300 for improvements. The four-acre parcel of land was valued at $19,200. Based on the court's prior determination, three of the four acres must be allocated to the residence. After the adjustment for the three acres, the total real market value of the residence at the time of the purchase was $169,500. The real market value of the rental property, including one acre of land ($4,800) and improvements ($33,250), was $38,050. Using a fair market value allocation, the correct basis of Plaintiffs' residence and rental property is as follows:

Residence:  $\frac{\$169,500}{\$207,550} \times \$200,000 = \$163,334$

Rental:     $\frac{\$\ 38,050}{\$207,550} \times \$200,000 = \$\ 36,666$

In order to complete the computation of adjusted basis and costs of sale, the sales commission in the amount of $17,400

must be allocated. The court accepts Defendant's method of allocation, using the fair market value of the properties sold. The sales commission is allocated to the two properties as follows:

Residence: $\dfrac{\$310,000}{\$357,000} \times \$17,400 = \$15,109$

Rental: $\dfrac{\$\ 47,000}{\$357,000} \times \$17,400 = \$\ 2,291$

The adjusted basis plus the costs of sale[7] are as follows:

|  | Residence | Rental |
| --- | --- | --- |
| Purchase Price (allocated) | $163,334 | $ 36,666 |
| Additions: Improvements | 46,463 | 0 |
| Sales Expenses | 1,905 | 329 |
| Sales commission (allocated) | 15,109 | 2,291 |
| Subtractions: Disallowed Costs | ( 5,791) | 0 |
| Depreciation | ( 8,947) | ( 8,964) |
| Adjusted Basis | $212,073 | $ 30,322 |

Accordingly, the taxable gain on the sale of the rental property was:

| Sales Price | $38,179 |
| --- | --- |
| Adjusted Basis | $30,322 |
| Taxable Gain | $ 7,857 |

### III. CONCLUSION

Now, therefore,

IT IS HEREBY ADJUDGED AND DECREED that the gain on the sale of Plaintiffs' rental property in tax year 1996 was $7,857.

---

[7] With the exception of the purchase price and sales commission, the court has accepted Defendant's costs of sale.